Good morning, Your Honor. May it please the Court. I have two points that I want to emphasize today in the argument. One is that a tile is an image, which is separate and distinct from a window. And we'll get into why that is, but really the support for that comes straight from the common specification to all four circuit patents. And once we establish that a tile is an image, separate and distinct from a window, we will show that there is no underlying evidence in the prior art of any of the MSIE kit active desktop items or active channel items showing an image that matches onto the claimed tile. That's one. The second point I'd like to make today is that a grid, as claimed in the asserted patents, is an object that is separate from the tiles. It has properties of its own. Not only does it dictate where the tiles are positioned, it also controls certain properties of the tiles. So it is something that exists independently, and we will also show that there is nothing in the prior art that shows that there is an independently existing grid. Instead, what the MSIE kit reference shows is an arrangement of items that appears to be a grid. It's in a row and column arrangement, but there's no underlying structure that qualifies as a grid under the term as used in the asserted patents. So just to confirm, the case turns totally on claim construction, correct? That's correct, Your Honor. Well, yes, yes. I was going to get into a style, but we'll be right. If we agree with you, you win. Otherwise, the other side wins, right? That is correct. Okay. So, well, let me qualify that. The only issue before the Court today in terms of claim construction, we could win on claim construction and get a remand potentially to discuss other prior art references, but yes, this is claimed. In terms of before us.   So when it comes to tile, the parties competing constructions, we use a graphical representation to describe what a tile is. The PTAB and Microsoft use a graphical user interface element, but really what that is at heart is an image, and if you look at appendix page 197, this is the specification for the 338 patent, which, again, is common to all four asserted patents. It tells us very clearly the tile is an image, and this is not an embodiment. This is not permissive language. This is language that describes their structure of tiles as claimed by the pats. So the tile is an image. This is column 12. What is this at 197? Page 197, column 12, lines 43 through 46. The tile is an image that at any given instant is resident on the file system. This image is separate and distinct from the application program or file associated with the tile. So right there, it's very clear and plain, a tile is an image, and that alone dictates. This tile is an image argument. It sounds different from what my understanding of what the dispute was going to be about, which was you wanted an additional limitation added into the claim construction about a tile as providing a more limited representation than what's provided in a window. That's my understanding. That's correct. Your understanding is correct. I will get there. So, you know, when we're talking about a tile as an image, I'm not sure how that's connecting to what the actual dispute is, the actual language you wanted to add and inject into the claim construction that the board didn't grant. In order to understand why a tile presents a more limited set of information than the underlying information, it's important to note that the tile is an image that is associated with underlying information. So is a window an image, right? A window can contain an image. A window is a display that can include images. A window, as discussed in the patent, is not in itself an image. It is an application. So if you look at the definition I just read, how a tile is an image associated with an underlying application or file, a window in that example would be the application or file. I don't remember in your blue brief, and maybe I'm wrong about this, that you're arguing that the distinction here was that a tile was an image and a window wasn't an image. Where's that in your brief? That is not in the brief, Your Honor. So the argument is that a tile and a window are distinct, and you're looking at this de novo, so I'm just pointing you to parts in the record that you can rely on. You've got to make your arguments in your blue brief. If you didn't make the argument, we're not going to consider it. Well, the argument was that a tile and a window are distinct, and what I'm attempting to do at this point is explain why, provide some additional context in the patent. And one of the key points, as Judge Chen pointed out, is that a tile discloses a limited representation of information than the underlying information. What does that mean, a more limited representation? So if a tile is an image and a window is the underlying application or file, a tile discloses a portion but not the entire information. So in order to get the entire information from a tile, a user has to select a tile. And there's a section in the specification that talks about tiles being selected. So it has to display less content than what a window would display? Correct. Okay. That seems to clash with the prosecution history, where during the prosecution of your parent patent, you told the PTO, and this is in the joint appendix at 12.321, that a tile, quote, differs from a window in that a tile is smaller than a window, thereby permitting multiple tiles to be displayed simultaneously without overlapping one another, and without necessarily truncating the display of content. Sure. So that's why it feels like what you're now asking to add into the construction directly clashes with what you told the PTO as to the meaning of what a tile is. I would say they're consistent. The language used in the prosecution history was more permissive, doesn't necessarily truncate, but the idea is that the information in the tile. So it can or cannot truncate? The information in tile does truncate. Well, that's what you want today. I'm saying what you told the PTO back in the day is it doesn't necessarily truncate. Right. So that was qualified. And I think the way to read that, consistent with the actual specification, is regardless of what was said to the PTO. Okay. Let's ignore what you said to the PTO. I don't mean to ignore it, but I was saying if there's a conflict between what was argued in the prosecution and what the specification says. The specification said pretty much the same thing in column 11 at line, I don't know, 9. The tile will typically be smaller in size than the window, allowing the user to view multiple tiles simultaneously. Correct.  And that's a size. It could be. That's a size distinction. That section, Your Honor, doesn't speak to the content. It speaks to the size of the tile versus the size of the window. And we're not relying on the difference in size as a definitional distinction in the briefs or here today. What is the best statement in this specification that proves to us that a tile is distinct from a window because the tile necessarily is displaying some truncated amount of content that would otherwise be displayed in a window? It is a combination of statements. The first being, staying on appendix page 197, column 12, lines 8 to 15, when a tile is selected, whether by mouse click or otherwise, the tile instantly provides the user with access to the underlying information. What lines is that again? That is column 12, lines 8 to 15 on appendix page 197. Okay. Was that the end of your quote? That is one part of the evidence. That didn't really pop for me in terms of saying what you wanted to say. No. So the logical implication there is that in order to get access to that underlying information, the user has to select a tile, which means prior to selection, the user does not have access to that information. The tile does not convey the underlying information until it is selected. Do you have a second quote? A second quote is that a window is full information. I'm sorry, where? Hold on one second. That, I believe, is in the end of column 3, beginning of column 4. It's describing the priorities. So, yes. In appendix page 193, if you look at column 3, line 65, this is where the patent is distinguishing between icons and windows. It says, consequently, the user's viewing options are limited to a choice between one presenting very limited information about a multitude of programs, that's an icon, and one presenting full information but only of a single program or data source. That's a window. So the patent tells us that the prior art windows, that it was distinguishing from tiles, displayed full information. Well, that's distinguishing from icons. That's distinguishing windows from icons, but it says that windows are distinguishable because they provide full information. Compared to icons. Yes, but also compared to tiles. Well, it's not talking about tiles right here. That sentence doesn't. So if you read that sentence in conjunction with the sentence that says, a tile does not provide access to the underlying information until it is selected, that brings you to the place where a tile is necessarily providing content that is less than the underlying information. Otherwise, there would be no need to select it. It would be on the tile. The user would have access to it without taking any action whatsoever. And I would note that all of the examples of a tile providing information to a user upon being selected are providing more information. Now, some of those are from preferred embodiments. Some of the language is permissive, but taken as a whole with the sentences that we just read from the specification, the only logical conclusion is that a tile, as distinct from an icon and a window, provides a limited set of information than a window would provide, which is, according to the patent, full information. Did you cite this sentence on column 12 to the board? It's on column 12 to the board. The tile is an image that any given instance. That sentence, I believe. When the tile is selected. Oh, we did. That's in the record, and I'd have to find out simply where, but I'm certain that we did. There was some discussion at the hearing as to whether an image would be a tile if the underlying information was also an image, and whether there was a loss in resolution. And our position here today is that in that situation, anything that provided less information than the underlying information would be a tile. If all the underlying information was present on the image that the user sees without selecting, that's a window because that's full information. So we would make that distinction. And I would just note that there are other sections in the specification that refer to tile images, tile pictures, graphics, as opposed to a window. And a window certainly possibly could be an image. It's certainly not something that's necessary. It's not inherent in the nature of a window that it's an image, as opposed to a display, which is a term that the patent uses very differently. A display could include many images plus hyperlinks and other things. So with a tile being an image, there is nothing that the petitioners point to in the petition or in the briefing in Active Desktop, either channels or items, that is an image. They point to web pages. So an Active Desktop item, admittedly through their own brief, is a web page. An Active Channel item is a web page. There's no suggestion that those are images, as the patent says the tiles are. Now, it's possible that you… I don't think that argument was made below, right? No, the image… Between tiles must be images, and therefore the prior art does not teach tiles because the prior art doesn't teach images. True. The argument today is that because it's an image, it necessarily conveys less context than a web page, for example. A web page is not an image. You admitted earlier you didn't argue that. We'll agree. But it's in the record, Your Honor, and for claim construction purposes, under de novo review, you're entitled to look at anything in the intrinsic record. So it would be helpful… Right, but when you start talking about the prior art doesn't teach a tile because the prior art doesn't teach an image, I mean, that is something that needed to be argued and presented below, and I don't think you argued and presented that theory of why the prior art does not teach a tile. We did distinguish between tiles and icons, and icons are images because tiles do… I know, but let's just boil it down. I mean, getting back to my question, I don't believe that specific argument was presented to the board for the board to confront and then have to address and resolve. Is that fair to say? That is fair to say, and that is correct, and I beg the court's forgiveness and tolerance in that, but the purpose here is not to introduce new arguments. It's to give you the information that you need to make a de novo determination in claim construction based on the intrinsic record before you. That is all. So I've got just a minute left. I don't want to talk… You want to save the rest of your time for it all? Real quickly, I just wanted to emphasize that a grid is a structure. There's nothing in the underlying prior art that discloses a grid structure. It's just an arrangement of tiles that happens to align in rows and columns. It's not a grid as that term is used in the patent. Thank you. We'll give you two minutes for rebuttal. Mr. Fougere, is that how you pronounce it? May it please the court. Josh Fougere on behalf of Microsoft. What we just heard is a different case than I expected to be arguing, so I'd like to argue about what was in the briefs. And the focus of the discussion here today has been on the word tile. The only issue relevant to patentability is Servcast's appendage phrase, which is what they're using now to try to build in this idea of an image, that the representation of the underlying information must be more limited than the representation provided by a window. The board was all over this. It asked repeatedly for the distinction between windows and tiles and what set them apart. Servcast could provide it and, in fact, admitted at one point that one of the weaknesses of the specification is that it may not be as clear as they would prefer it to be. That's absolutely true. Servcast has been trying to pin down the specification's alleged difference between windows and tiles for more than a decade, and it's always changed. At the PTO, as you said, Judge Chen, it was about size and toolbars. In the 403 litigation, it was about persistence or selectability. In the blue brief, it was about a more limited representation. But it doesn't take very much effort to look at what the blue brief said and see that it's not lexicography in any way, shape, or form as definitional. So on page 5, they said that a tile's defining characteristic is how it presents content. And then they said the specification discloses four distinct manners in which a tile provides a more limited representation of information. They then block quote from the specification at appendix 197, column 11, lines 35 to 41. But what they leave out, not only does that say tiles may present, but what they leave out is that the sentence starts, for example, in a preferred embodiment. That's not lexicography. It's not definitional. And that's what they said the defining characteristic was in their blue brief. They said the same thing at page 29 where they claimed that there was an express disclaimer that tiles are not windows by citing to a statement about how tiles do not necessarily have toolbars. Same point. Some do have toolbars, but that is a statement about what they do not necessarily have, and it does not define what a tile is. The story is the same for grid. There wasn't much discussion of it in the opening argument, but they argue again lexicography from examples and embodiments if you look at each of the specific things that they say provides a definitional statement from the specification, it doesn't. And the reply brief further undermines their attempt to import limitations about continuity and control. They're saying the grid somehow provides structure that the prior art was lacking. And that the grid controls the layout of the tiles. Right. That it's some sort of active element. And there are two responses, or several responses to that, but the board very correctly looked at what they were citing and said this is just about preferred embodiments. It's just talking about section, I think it's figure 7. And in any event, we said their reply brief comes back to this enforcement point and says, well, users can move tiles around the grid, but there's also this independent claim, I believe it's 17, that says you can have software that actually automatically does certain things for the grid. But that just proves our point. That means that it's not inherent in the definition of grid itself if you have to have a further independent claim saying provide software to do this. And we also cited in the red brief at pages 17 to 18 how this sort of enforced control idea is again something about preferred embodiments. We said at the bottom of 17, carrying over, the grid says, or the spec says in some embodiments, grids comprise instructions for assigning tile size intelligently when a user specifies or receives a number of tiles. That's a preferred embodiment. It's not the definition of grid. And nothing in the claim or in any of the specification statements that they've pointed to defines grid. Servcast didn't argue about the conditional request issue. I'm happy to answer questions about it. What happened there between the two IPRs? Why are you laughing? I think I know why. Go ahead and answer the question. I don't know. I mean, it's the same panel of the board, right? You don't know. Well, I mean, I don't know. What happened is we presented alternative arguments in both IPRs. We said MSIE kit anticipates, and we said, and it has this if-modified-sense thing that requests that sends over, asks if it's been modified, and it comes back with a yes or no so you know whether it has or not. We also said if the request should be if-unmodified-sense, then you can look at this RFC 2068. In one IPR, the board adopted the anticipation argument. In the other, the board adopted the obviousness argument. They were alternative arguments made in both for the same limitation. And I think importantly, Judge Chen, we said even if you thought, I mean we think both are very much supported by substantial evidence, but even if you thought one or the other was better or absolutely correct, affirming one means affirming the other. They have no response in their gray brief to the fact that that has immediate preclusive effect on the other IPR. The issues were the same across both in terms of how they were argued. So if you think one or the other is good, then that applies to both, and they don't respond to that. It's the same claim? It's not the same claim. It's a different, I mean the conditional request language is the same, but the claim is not the same. Right. But I guess your point is it's not inconsistent to say both alternatives are correct, and one we're going to rely on one alternative, and the other one we're going to rely on the other alternative. That's exactly right. And in one of the patents, Judge Chen, this may be what you're getting at, but Claim 1 actually does talk about updating if it has changed, I believe. And so that could have been a part of it, but Judge Dyke, that's exactly right. You can satisfy a limitation in two different ways. That's what we argued. The Board agreed, and there's no problem with either one, but either one suffices to affirm. Getting back to tile, what do you say about that one sentence the opposing counsel cited in Column 12 about when a tile is selected, then all of this underlying information pops up? The selection, yeah. That is to say perhaps that's implying, well, the tile as is is a little bit deficient in what it's displaying, and it's only after you click do you get all the information, unlike a window. I think that's baking a lot into the sentence, as your questioning earlier suggested, but I think there's an even more fundamental point about selectability, which is that the Bluebriefs didn't argue about it at all. This was an issue in front of the Board. The Board said we don't actually see a meaningful difference between the proposed constructions on selection or selectability, and it doesn't affect our patentability determination. SERFCAS didn't respond to that whatsoever in the Gray Brief, and so it didn't affect the IPRs, and therefore it doesn't affect the patentability issue. Nor do I think it provides anything like the kind of definitional statement that you would need to say, okay, aha, now after all these years, this is what a tile is. Unless the panel has any further questions, I would urge you to affirm. Okay, thank you. Mr. Steele, you have a couple minutes. Thank you, Your Honor. Quickly, with respect to GRID, what the patent says, which is definitional, is not limited to any embodiment. It says that this is appendix page 198, column 14, line 28. The GRID controls the layout and priorities of the tiles, and priorities refers to how the tiles get updated. Some get updated more often than others. So the GRID not only controls how the tiles are placed. Where are you referring to? That is appendix page 198, column 14, line 28, and it's talking about GRIDs in general, not an embodiment. But the user can also control the GRID, right? The user can. That's what column 14 later on in that column talks about, how the user can control the GRID. The user can create the GRID, and the user can place tiles onto the GRID. But once tiles are on the GRID, the specialist talks about taking a document and dragging and dropping it into the GRID to create a tile. Once they're in the GRID, the GRID, according to the specification, controls the layout and the priorities of the tiles. You can, for example, click on a particular tile and expand that tile up on top of the other tiles in the GRID, thereby, I guess, breaking up whatever structure you're talking about that the GRID has. What the patent discusses there is moving it into the foreground. So at that point, it leaves the GRID because the user has selected it and is interacting with it like a window, like you would select a window and get more information. But when a tile is in the GRID, is placed in the GRID, the user can put tiles. It can rearrange tiles, but only according to the GRID restrictions. You can't put tiles wherever you want. Like in Active Desktop, you can put items anywhere on the overlapping or however you want. There's no restriction on how you place them. The GRID here controls that. What did your report say about the board's alternative finding that even under your construction of GRID, the prior art teaches that version of GRID? What the PTAB relied on there was the arrangement of a 3x2 GRID of Active Desktop items that was locked down. So those items could not be moved. What did your blue brief say in response to that finding? That that's not a GRID because it doesn't control. It's just removing functionality, but it's not controlling where those tiles are placed. It's not a GRID. It's just an arrangement that happens to be in a 3x2 row and column form, but it's not a GRID as that term is used in the patents. Okay. Anything further? All right. Thank you. Thank you. That concludes our session for this morning.